UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARREN JOHNSON, *on behalf of himself and all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| GILEAD SCIENCES, INC., | ) ) |
| Defendant. | ) ) |

Case No. 4:20-cv-1523-MTS

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Transfer Venue, Doc. [21], pursuant to 28 U.S.C. § 1404(a), to the Northern District of California in order to consolidate this action with 48 other cases. *See Holley v. Gilead Scis,, Inc.*, No. 4:18-cv-06972-JST (N.D. Cal.) ("*Holley*"). For the following reasons, the Court denies the Motion.

**I.    Facts**

A more detailed factual summary of the claims and issues is stated in the Court's previous opinion in this case, *Johnson v. Gilead Sciences., Inc.*, --- F. Supp. 3d. ---, No. 4:20-cv-1523-MTS, 2021 WL 4439246 (E.D. Mo. Sept. 28, 2021). *See also* Doc. [18]. To briefly summarize, Plaintiff Darren Johnson alleges Defendant Gilead Sciences, Inc.'s ("Gilead") engaged in unlawful conduct in connection with the sale and marketing of prescription drugs containing tenofovir disoproxil fumarate ("TDF") and tenofovir alafenamide ("TAF") for the treatment of HIV. According to Plaintiff, Gilead engaged in deceptive practices when it sought approval of TDF based on misrepresentations of TDF's superiority and ended TAF development under false pretenses, therefore knowingly depriving Plaintiff of a safer and efficacious drug.

1

On August 27, 2020, Plaintiff filed suit against Gilead in the Circuit Court of the City of St. Louis asserting two causes of action under Missouri state law for unfair or deceptive practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 (Count I) and unjust enrichment (Count II). On October 23, 2020, Gilead removed the action to this Court and one week later, filed a Motion to Dismiss, Doc. [6]. In that motion, Gilead argued all of Plaintiff's claims were preempted, among other things.[1] In September 2021, the Court denied Gilead's motion in its entirety. Doc. [18]. Soon thereafter, Gilead moved to transfer the case to the Northern District of California, Doc. [21], to consolidate this case with the *Holley* cases.

Even before the Court decided Gilead's motion to dismiss, the *Holley* litigation had grown to encompass other consolidated actions by TDF drug consumers against Gilead, primarily arguing that they experienced kidney and/or bone damage as a result of using one or more of Gilead's TDF medications. *See* Doc. [23] ¶¶ 6–8; *Holley*, Doc. [786]. As of the date of Gilead's current Motion, *Holley* encompassed 48 consolidated actions, involving 2,467 total plaintiffs.[2] Doc. [23] ¶¶ 5–6. Based on the large number of plaintiffs, the court decided to schedule bellwether trials and the parties are currently engaging in initial discovery for discovery pool cases.[3] *Id.* ¶¶ 10–16. Twenty-four individual plaintiffs (of over 2,000 plaintiffs) were chosen for the Phase I discovery pool and from there, just six will be selected for the first round of bellwether trials. *Holley*, Doc. [786]. The first bellwether trial for *one* plaintiff is set for January 2024.

Citing this progress, Gilead moved to transfer Plaintiff's case to Northern California for consolidation with the *Holley* cases. Doc. [21]. Gilead additionally notes that it is headquartered

---

[1] Gilead also argued that Plaintiff failed to plead facts showing a violation of the MMPA or unjust enrichment.

[2] Of the 2,467 total plaintiffs, 29 are Missouri plaintiffs. Doc. [23] ¶ 6. As of the date Gilead filed this Motion, 416 plaintiffs have been dismissed.

[3] As of the date Gilead filed this Motion, Gilead has produced over 11.9 million pages of documents and the plaintiffs have taken nineteen depositions of current or former Gilead employees. *See* Doc. [23] ¶¶ 11–15.

2

in Northern California and nearly all its witnesses and third-party witnesses (*i.e.*, former Gilead employees or current employees) at least reside in the district.

## II. Relevant Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute "reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Intern., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, the Court is not limited to these factors; deciding a motion to transfer requires "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Relevant factors include: (1) the parties' choice of forum; (2) the convenience of the parties; (3) the convenience of non-party witnesses; (4) the availability of judicial process to compel testimony from hostile witnesses; (5) the governing law; (6) relative ease of access to sources of proof; (7) possibility of delay and prejudice if a transfer is granted; and (8) practical considerations of cost and efficiency. *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001). "The party moving for transfer must make a clear showing of the right to transfer" and that the "burden on the moving party is substantial." *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB, 2019 WL 11648563, at *1 (W.D. Mo. Aug. 22, 2019). On this motion, Gilead has the burden and must demonstrate that the balance of the factors "strongly favors" transfer. *Saxerud v. T-H Pro. & Med. Collections Ltd.*, 482 F. Supp. 3d 900, 901 (E.D. Mo. 2020); *Terra Int'l*, 119 F.3d at 695–96 (explaining party seeking transfer bears burden of proving transfer is warranted).

### III. <u>Discussion</u>

The Court begins its analysis by discussing Gilead's practice of delay.[4] Gilead's request to transfer venue comes nearly one year after it removed the case to this Court and notably, *after* it filed a motion to dismiss. Only after the Court denied Gilead's motion to dismiss did it seek to transfer. This instance is not the first time Gilead employed such a tactic. When faced with this exact scenario, a federal district court in New Jersey denied Gilead's request for transfer.[5] *See Gaetano v. Gilead Scis., Inc.*, No. 21-01418 (KM) (JBC), 2021 WL 3185822, at *4 (D.N.J. July 27, 2021). The New Jersey court stated: "[t]he problematic strategy of moving to dismiss, and then moving to transfer, is particularly severe with Gilead because—as it openly admits—it is currently asking several federal courts of origin to decide similar motions to dismiss, no doubt hoping to book a favorable ruling somewhere," such that "courts across the country will expend resources on Gilead's arguments, an expenditure of resources that could potentially have been avoided if Gilead had asserted a meritorious motion to transfer in timely fashion." *Id.* at *6. Gilead has a pattern of "tr[ying] its luck in one court, receiv[ing] an unfavorable ruling, and then [seeking] to litigate elsewhere."[6] *Id.* Public interest discourages this type of behavior.[7] *See Cohen v.*

---

[4] Gilead is correct that § 1404(a) imposes no time limit on when a party must move to transfer venue, *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980), and delay in filing the motion is not by itself cause to deny. *Fluid Control Prod., Inc. v. Aeromotive, Inc.*, No. 4:09-cv-1667-CAS, 2011 WL 620115, at *5 (E.D. Mo. Feb. 11, 2011). Nonetheless, courts look at a party's delay in moving for transfer. *See Monsanto Co. v. Gastel*, No. 07-5119-cv-SW-RED, 2009 WL 10672446, at *2 (W.D. Mo. Jan. 2, 2009) (finding the movant's delay in filing the motion to transfer prejudiced the other party); *see Am. Standard, Inc.*, 487 F. Supp. at 261.

[5] Notably, the New Jersey case is much more similar to the *Holley* cases than Plaintiff's case here, as *Gaetano* is based on personal injury claims.

[6] The Court in *Gaetano* foretold that Gilead would attempt this tactic again, which Gilead is now employing before the Court. *Gaetano v. Gilead Scis., Inc.*, No. 21-01418 (KM) (JBC), 2021 WL 3185822, at *4 (D.N.J. July 27, 2021) ("Presumably, if it loses those motions, Gilead will do as it did here: ask to transfer those cases to Northern California.").

[7] Gilead failed to cite to a single case where a contested motion to transfer was granted after the movant had engaged in a similar tactic.

4

*Waxman*, 421 F. App'x 801, 803 (10th Cir. 2010) (affirming denial of a motion to transfer filed after a motion to dismiss because the movant desired to seek a forum where he would not lose); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017) (per curiam) (similar); *In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012) (denying motion to transfer after delayed request).

The prejudicial effects on Plaintiff from the advanced progress and discovery in the *Holley* cases also weigh against transfer. The *Holley* litigation already has been progressing for nearly three years. As Gilead itself touts, the discovery has been robust—initial discovery already closed for the first bellwether trials and case-specific discovery is currently set to close in September 2022[8]—and several discovery issues have been briefed and resolved, some in the plaintiffs' favor and some in Gilead's favor. Doc. [32] at 9. Moreover, the *Holley* court has entered scheduling orders, set fact discovery, expert discovery, and motion deadlines, all leading up to an initial bellwether trial in January 2024. The Court finds it prejudicial to hinder Plaintiff and the putative class's discovery and to also limit their discovery to be conducted in another forum for which they had no input and participation.[9] Contrary to Gilead's concerns, the fact that depositions have occurred, and extensive discovery has been produced militates *against* transfer because parties here may use transcripts or records for any overlapping issues in the current case. And despite some potential overlaps, significant legal and thus factual differences exist between Plaintiff's case and the *Holley* cases—namely that *Holley* encompasses claims resulting in personal injury,[10]

---

[8] For Phase I discovery, initial discovery closed in December 2021, case-specific fact discovery closes in June 2022, and case-specific expert discovery closes in September 2022. *Holley*, Doc. [836].

[9] Gilead's tactical decision to not seek transfer at the commencement of this case means Plaintiff had no role in negotiating these agreements or rulings. The fact that Gilead had the information in its possession to move for transfer much earlier exacerbates the injustice of the delay. *See Monsanto*, 2009 WL 10672446, at *2.

[10] *Holley* concerns personal injury claims including strict liability, statutory product liability, negligence, and breach of warranty.

which present highly fact-specific issues requiring individualized inquiries. Such differences mean that a significant amount of discovery from *Holley* is not relevant to Plaintiff's claim and that discovery in *Holley* likely focused on different topics than those relevant to Plaintiff's claim.

Additionally, the advanced progress in *Holley* does not clearly show that a transfer would promote expeditious and more efficient litigation. Because of the progress and complexity of the *Holley* cases, Plaintiff's case could likely take a backseat to the lead cases. This possibility is evinced by the fact that the discovery pool plaintiffs already have been chosen.[11] Also telling is that majority of the claims in *Holley* concern personal injury theories resulting from claims of strict liability (design defect and failure to warn), statutory product liability, negligence, and breach of warranty. Thus, the *Holley* litigation and trial will require individual inquiries into each plaintiff's physical injuries and causation critical to such claims, which Plaintiff here does *not* advance. The factual inquires necessary in *Holley* could likely predominate over ones in Plaintiff's case. There is also a good possibility that a trial on Plaintiff's claims could be heard before even the *first* bellwether trial in Northern California due to the administrative challenges presented by the *Holley* cases. In *Holley*, the first case of the *first* plaintiff is at least two years away from trial, assuming no further extensions. On the other hand, Plaintiff has requested class certification seeking to resolve issues for the *entire* class; this action stands in stark contrast to the bellwether framework of resolving just six cases piecemeal, *albeit* with the hope of finding a beneficial outcome for all the litigants. Thus, based on the nature and proceedings of the *Holley* cases, consolidating and transferring Plaintiff's case could very likely cause delay. *United States v. Lord*, 542 F.2d 719,

---

[11] Also of importance, Gilead has made no showing that the Phase I discovery pool (from which the first bellwether trials will be selected) includes any plaintiff asserting any claims under Missouri law, let alone any MMPA or unjust enrichment claims, such as Plaintiff asserts here.

724 (8th Cir. 1976) (holding a court abuses discretion if transfer of a case to other possible districts would delay trial).

With these factors in mind, as well as considering the other factors in *Anheuser-Busch, Inc*, 176 F. Supp. 2d at 959, the Court finds that transfer is not warranted here.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer Venue, Doc. [21], is DENIED.

Dated this 26th day of January 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE