**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | ) | |
|---|---|---|
| JONATHAN SEARCY, *et al.*, | ) | |
| | ) | Case No. 4:20-cv-01523-MTS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
<u>THEIR CONDITIONAL MOTION FOR REMAND</u>**

# **TABLE OF CONTENTS**

Table of Contents ...................................................................................................................... i

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

    A.   Gilead fails to establish standing for the MMPA under its manufactured theory. ........................... 2

    B.   Missouri law provides a remedy through benefit of the bargain damages. ..................................... 7

    C.   If Gilead's standing test applies, remand is mandatory. ................................................................ 10

Conclusion .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Autumn Lakes Ass'n v. Tran*,
　655 S.W.3d 442 (Mo. Ct. App. 2022) .................................................................................. 12

*Barfield v. Sho-Me Power Elec. Coop.*,
　852 F.3d 795 (8th Cir. 2017) .................................................................................................. 4

*Bowles v. Sabree*,
　121 F.4th 539 (6th Cir. 2024) ................................................................................................. 6

*DaimlerChrysler Corp. v. Cuno*,
　547 U.S. 332 (2006) ....................................................................................................... 10, 11

*Davis v. FEC*,
　554 U.S. 724 (2008) ................................................................................................................ 6

*DZ Reserve v. Meta Platforms, Inc.*,
　96 F.4th 1223 (9th Cir. 2024) ................................................................................................. 3

*Gallagher v. Santander Consumer USA, Inc.*,
　125 F.4th 865 (8th Cir. 2025) ................................................................................................. 8

*Grawitch v. Charter Communications, Inc.*,
　750 F.3d 956 (8th Cir. 2014) .................................................................................................. 7

*Hennessey v. Gap, Inc.*,
　86 F.4th 823 (8th Cir. 2023) ................................................................................................... 8

*Hrivnak v. NCO Portfolio Mgmt., Inc.*,
　719 F.3d 564 (6th Cir. 2013) .................................................................................................. 6

*Hughes v. City of Cedar Rapids*,
　840 F.3d 987 (8th Cir. 2016) ................................................................................................ 11

*In re Asacol Antitrust Litigation*, standing was undisputed.,
　907 F.3d 42 (1st Cir. 2018) ..................................................................................................... 7

*In re Avandia Mktg. Sales Prac. & Prods. Liab. Litig.*
　100 F. Supp. 3d 441 (E.D. Pa. 2015) .................................................................................... 10

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
　2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ..................................................................... 10

*In re Emerson Elec. Co.*,
　2021 WL 5003102 (E.D. Mo. Oct. 28, 2021) ......................................................................... 8

*In re Polaris Marketing, Sales Practices, & Products Liability Litigation*,
   9 F.4th 793 (8th Cir. 2021) .................................................................................... 2, 3, 9, 10

*Johnson v. Gilead Scis., Inc.*,
   563 F. Supp. 3d 981 (E.D. Mo. 2021) .................................................................................. 5

*Judy v. Pfizer*,
   2010 WL 3001745 (Mo. Cir. Ct. July 27, 2010) ................................................................... 9

*Kendrick v. Ryus*,
   225 Mo. 150 (1909) ............................................................................................................. 8

*Koronthaly v. L'Oreal USA, Inc.*,
   374 Fed. Appx. 257 (3d Cir. 2010) ...................................................................................... 3

*Laird v. Tatum*,
   408 U.S. 1 (1972) ................................................................................................................ 3

*Larabee v. Eichler*,
   271 S.W.3d 542 (Mo. 2008) ................................................................................................ 8

*Lewis v. Casey*,
   518 U.S. 343 (1996) .......................................................................................................... 10

*Mikhlin v. Johnson & Johnson,*
   2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) ................................................................... 10

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .......................................................................................................... 10

*Murphy v. Stonewall Kitchen, LLC*,
   503 S.W.3d 308 (Mo. Ct. App. 2016) ................................................................................. 5

*Nationwide Transfer LLC v. Neally Law, LLC*,
   674 S.W.3d 488 (Mo. Ct. App. 2023) ............................................................................... 12

*Plubell v. Merck & Co.*,
   289 S.W.3d 707 (Mo. Ct. App. 2009) ................................................................................. 5

*Ross v. Siegert*,
   2024 WL 2803051 (E.D. Mo. May 31, 2024) ..................................................................... 6

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
   899 F.3d 500 (8th Cir. 2018) ............................................................................................... 8

*State ex rel. Coca-Cola v. Nixon*,
   249 S.W.3d 855 (Mo. 2008) ................................................................................................ 9

*Thompson v. Vintage Stock, Inc.*,
  2024 WL 1636705 (E.D. Mo. Apr. 16, 2024) ............................................................................. 11

*Tyrnauer v. Ben & Jerry's Homemade, Inc.*,
  739 F. Supp. 3d 246 (D. Vt. 2024) ............................................................................................. 3

*Vitello v. Natrol, LLC*,
  50 F.4th 689 (8th Cir. 2022) ..................................................................................................... 11

*Wilson v. Centene Management Co.*,
  144 F.4th 780 (5th Cir. 2025) ..................................................................................................... 7

**<u>Statutes</u>**

Mo. Rev. Stat. § 490.715 ................................................................................................................. 7

## **INTRODUCTION**

The Court faces a straightforward legal question with a clear factual record. Standing must be addressed as a threshold issue, and at this stage, the Court must evaluate the actual evidence before it.

Gilead has proposed a bright-line out-of-pocket standing test: to satisfy Article III's injury-in-fact requirement for MMPA claims, a purchaser must have paid more out of pocket than the product's actual value.[1] Gilead presented unrebutted evidence that Plaintiffs Searcy and Kirk paid less out of pocket than Plaintiffs' expert identified as the objective, actual value of TDF. Under Gilead's test, Plaintiffs lack standing to assert MMPA claims in federal court.

After forcefully arguing that the named Plaintiffs lack "economic loss," Gilead now scrambles to avoid the inevitable consequences of its own argument. Yet Gilead does not (and cannot) dispute that the Court must address the named Plaintiffs' standing first. Nor does Gilead retract its arguments or evidence about the named Plaintiffs' injuries or how standing should be analyzed under the circumstances of this case. It simply wants the Court to ignore the jurisdictional implications of its position and deny class certification. But controlling law does not permit Gilead to propose one test for standing as it relates to the named Plaintiffs and another as it relates to the putative class. Either Plaintiffs have Article III standing for the MMPA and the class should be certified. Or they do not, and the MMPA claim must be remanded.

---

[1] Plaintiffs maintain that they and every class member have Article III standing under the MMPA. They purchased and received medication worth far less than represented, creating objective economic loss independent of out-of-pocket payments and other reimbursements paid by collateral sources such as their insurance carrier. This lost expected value constitutes injury-in-fact.
  Plaintiffs' conditional motion responds only to the Court's potential adoption of Gilead's out-of-pocket standing test. Plaintiffs preserve their position that benefit of the bargain losses satisfy Article III regardless of out-of-pocket payments and other collateral sources.

1

### A.  GILEAD FAILS TO ESTABLISH STANDING FOR THE MMPA UNDER ITS MANUFACTURED THEORY.

Gilead concedes three dispositive points. First, it does not dispute the Court's independent duty to confirm jurisdiction. Doc. [252] at 2-3.[2] Second, it does not dispute that the Court must resolve each class representative's individual standing first. *Id.* Third, it does not dispute its own evidence and argument that, if Gilead's position is accepted, the named Plaintiffs lack standing under a benefit of the bargain theory. Doc. [255] at 5 n.3. Unable to escape these concessions, Gilead invents a novel standing theory that defies controlling law and distorts the record.

Now, Gilead suggests for the first time (without directly contending) that the named Plaintiffs have individual standing because "the Named Plaintiffs brought this case alleging that they 'would not have taken' a TDF medicine 'at any point' and/or would not have paid what [they] paid' but for the alleged conduct." Doc. [255] at 7. As an initial matter, this novel theory misrepresents the case. Plaintiffs alleged MMPA violations and sought class certification based on objective, benefit of the bargain damages supported by expert testimony and economic data, not subjective valuations. Doc. [244] at 3 n.3 (explaining Plaintiffs' theory is not based on subjective notions of consumer utility); Third Am. Comp., Doc. [69] at ¶ 76 (predicating MMPA injury on economic loss because "the product they and other Class Members purchased was worth less than the product they thought they had purchased had Gilead's representations been true").

In any event, under binding Eighth Circuit law, a plaintiff contending that he "would not have purchased" a product is insufficient on its own to confer Article III standing for an MMPA claim—there must be a concrete and particularized injury. In *In re Polaris Marketing, Sales*

---

[2] Thus, Gilead's claim that it "did not move to dismiss the Named Plaintiffs' individual claims under Rule12(b)(1)" is legally erroneous and irrelevant. Doc. [255] at 5. Gilead would not have had a basis to seek dismissal of a removed case based on subject matter jurisdiction. If anything, Gilead's decision to remove a case and invoke this Court's jurisdiction, only later to present a theory that self-defeats that jurisdiction, implicates the good faith of Gilead's arguments.

2

*Practices, & Products Liability Litigation*, 9 F.4th 793, 797 (8th Cir. 2021), the Eighth Circuit acknowledged that "the no-fire purchasers contend that they 'would not have purchased' or 'would have paid significantly less' for their Polaris vehicles if they had known of the alleged heat defect." *Id.* But the court still held that "the no-fire purchasers failed to allege an injury sufficient to confer standing" given that the defect did not manifest itself on Plaintiffs' vehicles. *Id.*[3]

Indeed, courts generally agree "that either asserting a 'benefit of the bargain' or 'overpayment' theory of economic harm based on a mere subjective belief in a product's quality will not suffice for standing." *Tyrnauer v. Ben & Jerry's Homemade, Inc.*, 739 F. Supp. 3d 246, 255 (D. Vt. 2024); *see also Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. Appx. 257, 259 (3d Cir. 2010) (plaintiff's "argument that she was misled into purchasing unsafe lipstick products" was "only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing."); *accord Laird v. Tatum*, 408 U.S. 1, 14 (1972) (subjective effects "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

Even if Gilead's novel theory had legal support (it does not), Gilead still fails to support it with any evidence beyond its own self-serving characterizations. At class certification, standing requires proof by a preponderance of evidence, not mere allegation. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024), cert. denied, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025). As the party invoking federal jurisdiction, Gilead cannot rest on mere allegations, it must present actual evidence establishing standing at this stage. *Id.*

---

[3] In *Polaris*, the "no-fire purchasers" did not contend that there was a manifest defect in the products they purchased, so they had no injury. Here, Plaintiffs contend that their injury was overpaying (with the help of insurance and/or other collateral sources) for TDF. This is an actual injury if Plaintiffs' theory is correct. But if the Court believes Gilead's argument, that Article III standing focuses on only the plaintiff's out-of-pocket payments, the named Plaintiffs have no Article III standing for the MMPA claim and it must be remanded.

3

Plaintiffs' declarations do not help Gilead. As noted above, Plaintiffs contending that they "would not have purchased" TDF is insufficient by itself under *Polaris*, and "would not have purchased" does not mean that they believe TDF is "valueless." Plaintiffs state they would not have bought TDF (which they did at an elevated price) knowing about its risks and if TAF had been available: a standard informed-choice claim, not an assertion that TDF lacks any value. Docs. [206-13] & [206-14]. This mirrors actual market behavior, where consumers rapidly shifted en masse to TAF once available. Thus, the real-world evidence shows that the proposed class would have (and did) perform the same as Plaintiffs. By contrast, Gilead "point[s] to no ***evidence*** that even one class member" would have chosen brand TDF over TAF when fully informed. *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 806 (8th Cir. 2017) (emphasis added). This reflects common sense: consumers would not purchase products with undisclosed defects even when they recognize that those products retain some value. And not at the elevated prices Gilead charged for TDF.

The interrogatory response Gilead cites is also irrelevant. It does not ask what Plaintiffs' current position is, based on the state of the evidence in 2025. The interrogatory was served (and answered) years ago and asks about facts that supported allegations made ***in the Complaint***. (*See* DX at Rog 24 ("STATE ALL FACTS identifying what the alleged 'true value' of the TDF based drugs was (as alleged in Paragraph 68(d))). It is hardly surprising that Plaintiffs' position ***in the Complaint*** from 5 years ago, before discovery commenced, may be different now, after some discovery has been completed. Plaintiffs' interrogatory response clearly noted this, including specifically that expert discovery had not been completed. Nor is the response framed around Plaintiffs' personal subjective beliefs about TDF's value. It addresses what "individuals" would value TDF "had [they] had full knowledge of TAF." In other words, the responses follow

4

Plaintiff's theory of standing, which is that benefit of bargain damages are not reduced by amounts paid by collateral sources like insurance, not Gilead's theory where standing is measured by the amount paid out-of-pocket exclusively by the purchaser.

Even viewing that evidence through Gilead's lens, it fails to establish by a preponderance that Plaintiffs believe TDF is valueless. The two pieces of evidence Gilead cites—a preliminary interrogatory response and declarations—simply show Plaintiffs would have made different choices with complete information and the option to buy the less toxic version. That is fundamentally different from believing a product has no value whatsoever.

Indeed, while Gilead faults Plaintiffs for refining their position on TDF's true value based on real-world market evidence and expert analysis (Doc. [255] at 10), Plaintiffs alleged that their economic injury under the MMPA would be measured by market data, pricing, and expert analysis adduced through discovery. Compl., Doc. [69] at ¶82(e). More importantly, what matters under controlling law for a benefit of the bargain analysis is the "*objectively* ascertainable loss" determined by comparing actual market values not personal feelings about a purchase. *Johnson v. Gilead Scis., Inc.*, 563 F. Supp. 3d 981, 989 (E.D. Mo. 2021) (emphasis added); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 314 (Mo. Ct. App. 2016) (same); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009) (same). Missouri's pattern jury instruction defines the measure as "the difference between the *actual value*" of what was sold and "what its value would have been" if as represented. Mo. Appr. Jury Instr. (Civ.) 4.03 (8th ed.) (emphasis added). "Actual value" means objective market value. *Id.* Simply put, a plaintiff's subjective belief is insufficient under the law, and ultimately irrelevant to an MMPA claim.

Notably, Gilead's argument defies common sense. Drugs are not individually negotiated at the pharmacy based on a purchaser's subjective valuation. They are offered on a take-it-or-leave

5

it basis at the price set by the drug manufacturer and the market. The price that the drug would have been sold if the drug had been accurately represented reflects what its value would have been and the difference between that and the actual sale price reflects damages under the MMPA. If, as Gilead insists, that is not an Article III injury—no matter how the sale price was divided between the Plaintiffs and insurers—remand is necessary because this Court lacks jurisdiction.

Gilead's argument that courts must assume success on the merits is simply contrary to the law here. By that logic, a plaintiff need only allege the existence of an injury. But standing is "a cradle-to-grave requirement" that must be proven with increasing rigor as litigation advances. *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013). Gilead's own authority is in agreement: "the proof required to establish standing increases as the suit proceeds." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Indeed, this Court correctly recognized it must determine whether objective benefit of the bargain loss, without direct out-of-pocket loss, creates Article III injury. (8/20/25 Mot. Tr. at 6:7-15.)

*Ross v. Siegert* proves the point. There, at the motion to dismiss stage and before the presentation of any evidence, this Court found standing based on allegations of emotional harm analogous to intentional infliction of emotional distress. The plaintiffs alleged FDCPA letters were "harassing, oppressive, and abusive, which caused Plaintiffs harm—harm that is quite analogous to that caused by intentional infliction of emotional distress." 2024 WL 2803051, at *2 (E.D. Mo. May 31, 2024). But unlike the motion to dismiss stage in *Ross*, factual allegations at this stage of this case are not assumed to be true. And *Bowles v. Sabree* explicitly limited its holding to the "preliminary stage of the litigation" before discovery. 121 F.4th 539, 551-52 (6th Cir. 2024). At this stage, parties must support their positions with evidence, not rest on pleadings. *Grawitch v.*

6

*Charter Communications, Inc.* addressed CAFA removal requirements, not the evolving burden of proving standing. 750 F.3d 956, 961 (8th Cir. 2014).

Gilead's out-of-circuit cases merely state the obvious: plaintiffs can have standing yet lose on the merits. But these cases do not help Gilead, which advances contradictory standing arguments: one to keep it in federal court and another to defeat class certification. In *In re Asacol Antitrust Litigation*, standing was undisputed. 907 F.3d 42, 47 (1st Cir. 2018) ("The named plaintiffs in this case indisputably have standing to litigate their own claims"). *Wilson v. Centene Management Co.* supports Plaintiffs' position, holding that "standing 'is the threshold question in every federal case'" and "if the class representative presents a standing problem, . . . it must be addressed prior to deciding class certification." 144 F.4th 780, 787 (5th Cir. 2025).

Finally, Gilead's sur-reply arguments against certification are both procedurally improper and substantively meritless. Plaintiffs' theory is straightforward: as purchasers who received a drug worth less than represented, they have standing to assert economic loss based on diminished value. This loss remains constant regardless of collateral sources. *See* Mo. Rev. Stat. § 490.715. Whether purchasers paid full price, had insurance coverage, or paid nothing through government assistance programs is irrelevant. The injury stems from the fact that Gilead pulled one over on consumers, so the actual value consumers received was less than the market value of those drugs, causing objective ascertainable loss in each transaction supported by real-world market data and expert analysis. The evidence at this stage confirms this uniform injury across the class. *See* Plaintiffs' Memorandum in Support of Class Certification, at 20-26.

### B. MISSOURI LAW PROVIDES A REMEDY THROUGH BENEFIT OF THE BARGAIN DAMAGES.

There is no doubt that Missouri law allows plaintiffs to recover the benefit of their bargain, even if it exceeds the money they paid for it. *See id.* at 19-27. The benefit of the bargain

7

methodology awards "the difference between the actual value of the property at the time of the sale and what its value would have been if the representations had been true." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 828 (8th Cir. 2023) (quoting *Kendrick v. Ryus*, 225 Mo. 150 (1909)). It applies to "ascertainable losses stemming from a difference between the representations of the defendants and the actual quality of the products purchased or received by the plaintiffs." *Id.* And, in applying the benefit of the bargain, "value refers to **market value**." *In re Emerson Elec. Co.*, 2021 WL 5003102, at *3 (E.D. Mo. Oct. 28, 2021) (citing *Larabee v. Eichler*, 271 S.W.3d 542, 548 (Mo. 2008)) (emphasis original). Although Gilead is correct that benefit-of-the-bargain is not the only way to establish injury or damages under Missouri law, it is the way Plaintiffs are proceeding here, and it establishes ascertainable loss under state law. Gilead fails to identify a case in which federal jurisdiction can be based on some other, hypothetical injury that Plaintiffs do not seek to redress.

While now calling it a "false premise," Gilead previously argued that Article III standing creates a separate requirement "on top of" any state-law remedies. *See* Mot. Tr. at 56:5-8 (describing "Article III standing" as "a federal requirement that operates regardless of whether state law decides they want to give away money to people who aren't actually injured"); *id.* at 56:22-25 ("The benefit-of-the-bargain theory . . . doesn't supersede the fundamental Article III injury-in-fact requirement"). Gilead now asks this Court to bypass jurisdictional questions and issue an advisory ruling that Plaintiffs lack both ascertainable loss and standing. This invites clear error.

Gilead can muster no response to controlling law on this point. (Doc. [252] at 5-6 (*citing St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500 (8th Cir. 2018), and *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865 (8th Cir. 2025)). Even Gilead's own cases prohibit reaching the merits without addressing standing. *Polaris* criticized earlier decisions that found "plaintiffs

8

failed to state a claim, without discussing standing and the requirement of injury in fact," and corrected course by "view[ing] the matter through the lens of Article III." 9 F.4th at 797. The Court cannot sidestep its jurisdictional obligations simply because Gilead wants to rely on Article III jurisdiction to defeat class certification when that argument applies equally to the named Plaintiffs. Rather, the appropriate place for Gilead to raise its certification arguments—if its position is correct—is in the state court where this case was filed.

Gilead cannot cite a single Missouri appellate decision supporting its ascertainable loss argument, relying instead on one inapposite trial court order. The reason is obvious: Missouri law provides a remedy here. *Judy v. Pfizer* is distinguishable and supports Plaintiff's position here. There, the court denied certification where "[p]laintiffs … identif[ied] a loss only as to some of the purchasers of the product" because those purchasers bought the drug "for … off-label use." 2010 WL 3001745, at *1, *4 (Mo. Cir. Ct. July 27, 2010). Those "[p]laintiffs ha[d] not identified any product that is priced based on a purchaser's intended use, nor is the Court aware of such a product." *Id*. Yet that is exactly what Gilead now insists in arguing that Plaintiff's subjective beliefs about value controls.

Despite Gilead dismissing *Craft* as non-precedential, both the Missouri Supreme Court and Eighth Circuit have adopted its reasoning. In *State ex rel. Coca-Cola v. Nixon*, the Missouri Supreme Court rejected a claim "based on a subjective preference against saccharin" that lacked any quantified economic value difference. 249 S.W.3d 855, 863 (Mo. 2008). The Court explicitly distinguished *Craft*, where "all consumers suffered an economic injury that was based on an objective characteristic." *Id.* That distinction controls here: Plaintiffs allege objective economic loss from receiving a drug worth less than represented, based on real-world market data and expert analysis, not subjective preferences.

Gilead's reliance on *Avandia*, *BPA*, and *Mikhlin* fails. In *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, the court rejected certification because the class swept in uninjured purchasers who knew about risks and bought anyway, and individualized "use" questions would predominate. 2011 WL 6740338, at *8 (W.D. Mo. Dec. 22, 2011). Here, TAF wasn't available until after the class period ended, eliminating any possibility of "economically uninjured" purchasers.

*In re Avandia Mktg. Sales Prac. & Prods. Liab. Litig.* offers no real standing analysis. The court simply deemed a prior Third Circuit ruling "dispositive on the standing issue" without elaboration, while rejecting a novel "increased risk" theory untethered to market prices. 100 F. Supp. 3d 441, 444 (E.D. Pa. 2015). The court also dismissed *Plubell*, despite its adoption by the Missouri Supreme Court and Eighth Circuit.

*Mikhlin v. Johnson & Johnson* is equally unavailing. The court found no fraudulent misrepresentation and erroneously failed to decide standing before reaching any other issue.[4] *Compare* 2014 WL 6084004, at *1 (E.D. Mo. Nov. 13, 2014) *with* Doc. [252] at 3 (collecting cases); *Polaris*, 9 F.4th at 797. Notably, both *BPA* and *Mikhlin* found no injury. Had plaintiffs sought remand in those cases, the courts would have been compelled to grant it.

C. **IF GILEAD'S STANDING TEST APPLIES, REMAND IS MANDATORY.**

Gilead's final argument, that the Court retains jurisdiction over unjust enrichment claims regardless of the MMPA claims, misunderstands fundamental jurisdictional principles. Standing is not dispensed in gross. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Plaintiffs must have standing for each claim they seek to press. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52

---

[4] The court also claimed "nothing in the analysis changes" between Rule 12(b)(1) and 12(b)(6). This misreads *Morrison v. Nat'l Australia Bank Ltd.*, where the Supreme Court held the Second Circuit made the opposite error. 561 U.S. 247, 254 (2010).

10

(2006). So federal courts cannot "exercise supplemental jurisdiction over a claim that does not itself satisfy . . . constitutional standing." *Id.*

If this Court lacks jurisdiction over the MMPA claims under Gilead's standing test, it must remand those claims, even if it retains jurisdiction over the unjust enrichment claims. The law is clear: "the Court must remand a claim it lacks subject-matter jurisdiction over even if the Court may, or will, continue exercising jurisdiction over other claims." *Thompson v. Vintage Stock, Inc.*, 2024 WL 1636705, at *1-2 (E.D. Mo. Apr. 16, 2024). The Eighth Circuit has repeatedly confirmed this principle: "If a case is removed from state court, those *claims* lacking Article III standing shall be remanded." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016). Thus, if the Court finds Plaintiffs lack standing for their MMPA claims, those claims must be remanded under section 1447(c).

While the law mandates remand of the MMPA claim if Plaintiffs lack standing, Gilead conspicuously fails to state its position on the unjust enrichment claim. Indeed, despite implying that Plaintiffs have standing for their unjust enrichment claims (while conspicuously refusing to concede that point), Gilead again argues that this same out-of-pocket standing test should apply to the unjust enrichment claims, i.e., that individuals without out-of-pocket payments have no standing to assert unjust enrichment claims. This is a misstatement of the law, as unjust enrichment claims do not require direct payments. *See Vitello v. Natrol, LLC*, 50 F.4th 689, 694 (8th Cir. 2022) (confirming that wholesale purchase prices—like what Gilead received—qualifies as a conferred benefit under unjust enrichment). Even under Gilead's test, because both named Plaintiffs undisputedly paid something out of pocket, Gilead cannot dispute that the Court could retain jurisdiction over Plaintiffs' unjust enrichment claims. Doc [255] at 14.

11

Finally, Gilead's sur-reply arguments against certifying the unjust enrichment claims constitute improper supplemental briefing. Regardless, they rest on a false premise: that unjust enrichment focuses on class members' out-of-pocket payments rather than the billions Gilead reaped from these transactions. Instead, "'[t]he focus [of unjust enrichment] is not on the loss sustained by the plaintiff, but on the benefit to the defendant." *Nationwide Transfer LLC v. Neally Law, LLC*, 674 S.W.3d 488, 491 (Mo. Ct. App. 2023), *reh'g and/or transfer denied* (Aug. 21, 2023), *transfer denied* (Sept. 26, 2023) (quoting *Autumn Lakes Ass'n v. Tran*, 655 S.W.3d 442, 449 (Mo. Ct. App. 2022)). And Gilead's other mischaracterizations require correction. While Searcy paid relatively little out-of-pocket due to insurance coverage, Gilead absolutely did not provide "his Atripla[] for free." Gilead collected thousands of dollars from Searcy's insurance for every TDF prescription. Doc. [244] at 15. By merely covering Searcy's copayment for some (but not all) of his purchases, this was a transparent effort to ensure the insurance payments kept flowing. And Gilead's claim that "there is no way to identify or exclude" purchasers who paid nothing out-of-pocket lacks any citation and defies common sense. Gilead has refused to provide its internal sales and prescription data until after class certification. Gilead has employees dedicated to tracking payment sources. Multiple commercial databases, including the IQVIA and Symphony data Dr. Bradford relied upon, contain out-of-pocket payment information.

## CONCLUSION

Plaintiffs request class certification for MMPA and unjust enrichment claims, but if the Court adopts Gilead's standing requirement that plaintiffs must have paid more out-of-pocket than the product's actual worth, it must remand the MMPA claims to state court.

12

Dated: October 14, 2025

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Patrick J. Stueve*
Patrick J. Stueve, Mo. Bar #37682
Todd E. Hilton, Mo. Bar #51388
Kasey A. Youngentob, *pro hac vice*
David A. Hickey, *pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
stueve@stuevesiegel.com
hilton@stuevesiegel.com
youngentob@stuevesiegel.com
hickey@stuevesiegel.com

**CALABRO | LAW OFFICE**
J. Toji Calabro Mo. Bar # 66574
Two Pershing Square
2300 Main Street, 9th Floor
Kansas City, Missouri 64108
Tel: (888) 585-12470
tojicalabro@calabro-law.com

*Attorneys for Plaintiffs*

13